Scott M. Tucker
**Chimicles Schwartz Kriner & Donaldson-Smith LLP**
2711 Centerville Road
Suite 201
Wilmington, DE 19808
(302) 656-2500
Fax: (302) 656-9053
Email: scotttucker@chimicles.com

(additional counsel appear on signature page)

*Counsel for Plaintiff and the Proposed Classes*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **SOKANKELLY LIM,** individually and on behalf of those similarly situated**,**<br><br>Plaintiff,<br><br>**vs.**<br><br>**TRADEZERO AMERICA, INC.**<br><br>Defendant. | **CIVIL ACTION**<br><br>NO. 1:24-cv-01196-GBW<br><br>Filing Date: May 15, 2025 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND TO AUTHORIZE CLASS NOTICE, AND SCHEDULE A FINAL APPROVAL HEARING PURSUANT TO <u>RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

Plaintiff Sokankelly Lim ("Plaintiff"), individually and on behalf of the Settlement Class, by and through her undersigned attorneys and with the consent, for settlement purposes only, of Defendant TradeZero America, Inc., submits this Memorandum of Law in Support of the Unopposed Motion for Preliminary Approval of Class Action Settlement, Authorize Class Notice and Schedule a Final Approval Hearing ("Motion").

### I.    <u>Preliminary Statement</u>

Plaintiff Lim requests an order (1) granting preliminary approval of the Settlement; (2)

certifying the Class for the purpose of the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) ordering the Settlement Administrator to direct and issue notice to the Class under the terms of the Settlement Agreement; (4) appointing Sokankelly Lim as Class Representative for Settlement purposes; (5) appointing Marc Edelson, Edelson Lechtzin LLP, and Scott M. Tucker, Chimicles Schwartz Kriner & Donaldson-Smith LLP, as Plaintiffs' Counsel for the Settlement; (6) designating Analytics, LLC as Claims Administrator; (6) approving and ordering the implementation of a proposed Notice Plan; (7) establishing a procedure for objections to the Settlement Agreement; (8) establishing a procedure for opt-outs from the Settlement Agreement; (9) setting a bar date for the submission of claims; and (10) entering a briefing schedule and date for a fairness hearing to consider final approval of Settlement Agreement.

The Parties agreed to settle this the above-captioned action ("Action") on a class-wide basis as set forth in the Settlement Agreement. This will create a $325,000.00 all cash non-reversionary fund that Defendant has agreed to pay under the terms of the Settlement to benefit the Settlement Class. If approved, the proposed Settlement will resolve and release all claims asserted in this Action. Plaintiff submits that the recovery here is commensurate with the result that could have been obtained at trial, which is a tremendous result given the inherent risks and expenses of continued litigation. Additionally, it provides substantial relief comparable to or better than other settlements approved in similar data breach cases. Plaintiff believes the proposed Settlement is not only in the best interests of the Settlement Class and should be approved by the Court on that basis alone, but is also an excellent result, especially considering the uncertainties, risks, and delay that continued litigation would bring, which might then result in a smaller recovery or no recovery.

As outlined below, Plaintiff respectfully requests that the Court review and preliminarily approve the terms of the proposed Settlement as fair and reasonable, and certify the Settlement

Class under Fed. R. Civ. P. 23 for Plaintiff's and the Settlement Class's claims arising from a cybersecurity incident that impacted TradeZero's vendor Tawk.To on or around July 29, 2024, as disclosed by TradeZero in September 2024 (the "Incident"). The executed Settlement Agreement is attached hereto as Exhibit A. Plaintiff also submits proposed Notices of the Settlement advising Settlement Class Members of the settlement, informing them of the terms of the Settlement Agreement, advising them of their rights under the proposed Settlement, and allowing them to be heard in the proceedings for the Final Settlement Approval. *See* Settlement Agreement Exhibits 1 (Short Form notice) and 2 (Long Form notice).  In addition, Plaintiff submits a Claim Form that will allow Settlement Class Members to submit a claim for the benefits provided by the settlement. *See id.*, Exhibit 3 (Claim Form).

## II.    **Factual Background**

Plaintiff filed this lawsuit after an unauthorized third party accessed data associated with customer communications that were contained on the Tawk.To platform which TradeZero utilizes for customer support to connect with their website visitors and customers in real-time. *See* Complaint, ECF No. 1 ¶¶ 37-42. TradeZero operates a stock and options trading platform including real-time streaming and direct market access. *Id.* ¶ 20.

In conjunction with the services it provides, TradeZero collects certain personally identifiable information ("PII"), from its clients and customers, including PII related to Plaintiff and the Settlement Class, and stores the PII on its network. *Id.* ¶¶ 1-3, 23. At the time of the Incident, Plaintiff was a TradeZero customer and her PII was present within the Tawk.To platform. *Id.* ¶¶ 21, 25, 41, 127, 138, 177. On or about September 19, 2024, Defendant began notifying Settlement Class Members, including Plaintiff, of the cybersecurity incident that impacted the Tawk.To platform on or around July 29, 2024. *Id.* ¶¶ 4, 5, 37.  TradeZero learned that the Incident

may have involved personal information belonging to Plaintiff and Settlement Class Members including names, social security number, date of birth, mailing address, telephone number and financial and banking information. *Id.* ¶¶ 4, 6, 7, 13, 37-42. Plaintiff Lim received the letter notifying her of the Incident, via email, directly from TradeZero dated September 19, 2024. *Id.* ¶ 12.

Prior to filing this Action, Plaintiff vigorously gathered all available information regarding the Incident, including publicly available documents concerning announcements and notice of the Incident and non-public information concerning the size and makeup of the putative class and the circumstances that led to the Incident. Thereafter, since Plaintiff was among those whose PII had potentially been compromised, she brought this putative class action. Plaintiff alleges that, due to the Incident, she and the putative Class Members were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. *Id.* ¶ 10.

While TradeZero generally denies the allegations, it agreed to engage in settlement negotiations to avoid disruption to its business operations associated with further litigation and the litigation cost and expenses, distractions, burden, expense, relating to protracted litigation. *See* Settlement Agreement, ¶ 8. The Parties subsequently reached a class-wide settlement and, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff files this motion for preliminary approval of that settlement.

### III.    <u>Procedural History</u>

Plaintiff filed the operative Class Action Complaint on October 25, 2024. *See* ECF. No. 1. On December 12, 2024, the Parties requested that the Court approve a Joint Stipulation extending Defendant's time to file its Answer to the Complaint to February 25, 2025. *See* ECF. No. 5.

4

The parties also engaged in several meet and confer sessions, and Defendant provided informal discovery responses to permit Plaintiff's counsel to facilitate informed settlement negotiations and evaluate settlement proposals. Defendant's responses enabled Plaintiff to discern the Class size and Defendant's potential liability exposure. Plaintiff also conducted research concerning other similar data breach settlements to compare with the settlement proposals to determine whether the instant Settlement compares favorably with other cases. This information was sufficient to facilitate informed settlement discussions among the Parties. As a result, the Parties have agreed to resolve Plaintiff's claims for a gross Settlement Amount of $325,000.

## IV.    **Settlement Negotiations**

Plaintiff considered several factors in this settlement. Initially, the settlement provides substantial relief comparable to or better than other settlements approved in similar data breach cases. Plaintiff's Counsel has substantial experience in data breach cases and concludes that the terms and conditions of this Settlement are fair, reasonable, and adequate to Settlement Class Members. Further litigation would be protracted and expensive, considering the uncertainty and risks inherent in litigation, including obtaining and maintaining class certification, retaining experts, conducting multiple depositions of Plaintiff's and Defendant's witness, defending multiple motions, and preparing the case for trial. Further, the costs associated with protracted litigation would reduce the potential benefits to putative Class Members. Counsel for both Parties have determined that it is desirable to effectuate a full and final settlement of the claims asserted in the litigation to avoid the associated burdens, risks, uncertainty, and extensive costs.

Plaintiff's Counsel believes the claims asserted in the Action have merit, but also believes that the Proposed Settlement is the best outcome. To come to this conclusion, Plaintiff's Counsel examined and considered the benefits to be obtained under the proposed Settlement set forth in

this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Plaintiff's Counsel fully investigated the facts and law relevant to the merits of the claims, and conducted an independent investigation of the alleged claims. As a result of these efforts, Plaintiff's Counsel concludes that the proposed Settlement set forth in the Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

Defendant has agreed to enter into the Settlement Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation that could impact its primary business functions.

## V.    Proposed Settlement Terms

The proposed Settlement Agreement provides that Defendant will make a total Settlement Payment of $325,000 in a non-reversionary Settlement Fund. This amount shall include all Individual Settlement Payments, Service Awards, Claims Administrator Costs, and Class Counsel Attorneys' Fees and Costs. The Settlement amount is a fair, adequate, and reasonable resolution of this claim, given the anticipated costs and delays as outlined above. It is well within the range of potential outcomes for the Plaintiff and the Settlement Class Members, given the potential issues with litigating the case through trial.

### A.  Proposed Settlement Class

The Settlement Class is defined as "all individuals residing in the United States whose PII was affected by the Incident." *See* Settlement Agreement, ¶ 47. Excluded from the Settlement Class are "(1) the Judge presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former officers and

directors; and (3) Settlement Class Members who submit a request to opt-out prior to the Opt-Out Deadline." *Id.*

### B. Releases

In exchange for receiving payments from the Settlement, the Settlement Class Members will agree to release Defendant from "all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, attorneys' fees, costs and losses resulting from the Data Breach, including liquidated damages, or other compensation against Defendant that may have accrued as a result of the Data Breach." *See* Settlement Agreement at ¶¶ 40-43.

### C. Compensation to Settlement Class Members

The Settlement provides significant relief to participating Class Members. The Settlement Agreement establishes three potential benefits for Settlement Class Members. It provides cash compensation for Documented Losses for Settlement Class Members who experienced financial loss, up to $10,000. *See* Settlement Agreement at ¶¶ 4, 18, IV.1.a. Next, Settlement Class Members may elect to receive Time Compensation, for their time and effort undertaken to secure their credit, up to 5 hours. *Id.* ¶¶ 5, 54, IV.1.b. Last, Settlement Class Members are also entitled to three years of no-cost credit protection coverage. ¶¶ 14, IV.1.d. Alternatively, they may choose to receive a cash payment in lieu of the credit protection. ¶¶ 6, 15, IV.1.c. If the total claims exceed the settlement amount, claims would be subject to a *pro rata* reduction. *Id.* ¶ IV.1.e. Further, should the total claims not exhaust the settlement fund, the remaining funds would be distributed, *pro rata*, to those Valid Claimants who have already received their Cash Payments.[1] *Id.* ¶ XII.

---

[1] *Pro rata* distribution will only take place if there are at least 10 Valid Claimants who would receive at least $25. *Id.* ¶ XII. If, however, there are less than 10 Valid Claimants and/or the Valid Claimants would receive less than $25, the remaining funds will be donated. *Id.*

### D. Notice

If the Court grants the instant Motion, Defendant will provide the Settlement Administrator with a Class List with the best available contact information for the Settlement Class Members. *Id.* at ¶ VII.1. The Settlement Administrator will send the Notice of Settlement and the Claim Form to all Settlement Class Members within 45 days following entry of the Preliminary Approval Order via postcard sent via U.S. mail and/or email. *Id*. at ¶ VII.2. The Settlement Class Members will have 90 days to return a Claim Form. *Id*. at ¶ 9. The Settlement Administrator will create a website with the Notice of Settlement and other documents and information related to the litigation. *Id*. at ¶ VII.3. The Settlement Administrator will also establish a toll-free phone number with information about the Settlement. *Id*. at ¶ VI.f.

### E. <u>Settlement Award Eligibility</u>

The Settlement Administrator will determine eligibility and the amount of Settlement Awards to be paid to the Settlement Class Members. *Id*. at ¶ IX.

### F. <u>Objections and Requests for Exclusions</u>

Settlement Class Members who wish to object to the Settlement must submit an objection in writing prior to the Claim Deadline, signed by the objector, indicating the grounds for objecting, and whether they intend to attend and be heard at the Final Approval Hearing. *Id*. at ¶ VIII. To be heard at the Final Approval Hearing, the objector must file notice with the Court and serve notice on both Plaintiff and Defense counsel. *Id*. To be excluded from the Settlement, a Settlement Class Member must submit a signed, written statement indicating that they do not wish to participate in the Settlement prior to the Claim Deadline. *Id*.

### G. <u>Final Approval Hearing</u>

Twenty-one (21) days prior to the Final Fairness Hearing, Plaintiff will file a Motion for

Final Approval, requesting that the Court enter an order finding that the Notice met due process requirements and that the Settlement was fair, reasonable and adequate, and directing that the Settlement Funds be distributed, the Action be dismissed with prejudice, and retaining jurisdiction to oversee settlement administration. The Motion for Final Approval will also seek the approval of attorneys' fees and expenses, as well as a service award for the Plaintiff. *Id*. at ¶ X.

### H.  Distribution of Settlement Funds

    i.  ***Gross Settlement Funds and Non-Reversion***

Defendant will fund the full amount of the Settlement Fund within thirty (30) days of the entry of a Preliminary Approval Order ("Gross Settlement Amount"). *Id*. at ¶ II.1.[2] The Gross Settlement Fund shall be used to pay (1) all Cash Payments to Settlement Class Members who submit Valid Claims and the cost of Credit Monitoring for Settlement Class Members who do not elect Cash Payment C; (2) any Service Award awarded to Plaintiff; (3) any attorneys' fees and costs awarded to Plaintiff's Counsel; and (4) all Notice and Administrative Expenses. Prior to the Effective Date, the Settlement Fund may be used only to pay Settlement Administration Costs. *Id*. at ¶ II.2. There will be no reversion of any portion of the Gross Settlement Amount to the Defendant after the Effective Date. *Id*. at ¶ 51.

    ii.  ***Service Awards***

Subject to the Court's approval, Plaintiff Lim may receive five thousand dollars ($5,000) as a service award for her efforts in prosecuting the case. *Id. at* ¶ XI. Plaintiff Lim worked diligently with Class Counsel to prosecute the matter. This involved multiple extended phone calls with Class Counsel prior to filing the Complaint wherein Lim described her interactions with Defendant's agents, her interactions with Defendant prior to the Incident, the inclusion of her PII

---

[2] To the extent the settlement is not finally approved, all amounts remaining in the Gross Settlement Amount at that time will be returned to Defendant. *Settlement Agreement*, XIV.5.

among the impacted data and the subsequent steps she took to determine what PII may have been impacted and protect herself from identity theft.

iii.     ***Attorneys' Fees and Costs***

Subject to the Court's Final Approval Order, the Parties agreed that Class Counsel may seek an award of attorneys' fees in an amount of one-third (1/3) of the Gross Settlement Amount ($108,342), which will compensate Class Counsel for all work performed in the Action. Also subject to the Court's Final Approval Order, Class Counsel will be reimbursed for their out-of-pocket costs from the Gross Settlement Amount. *Id*. at ¶ XI.2. The one-third fee is significantly less than Class Counsel's lodestar. Pursuant to Fed. R. Civ. P. 23 (h) and 54 (d), Class Counsel will file a motion for approval of attorneys' fees and reimbursement of expenses with its motion for final approval of the Settlement if preliminary approval is granted.

iv.     ***Settlement Awards***

Settlement Class Members will receive payment out of the Net Settlement Amount within 75 days of the Effective Date.[3] *Id*. at ¶ 11, XI.1. The Named Plaintiff will not need to submit a Claim Form to receive an award, but all other Settlement Class Members must do so. *Id*. at ¶¶ 8-10, IX. Any unclaimed Settlement Funds, subject to Court approval, will be donated to *cy pres* recipient National Association of Consumer Advocates.[4] *Id*. at ¶ XII.

v.     ***Settlement Administrator***

The Parties will engage Analytics, LLC as the Settlement Administrator.[5] The Settlement Administrator shall perform all the duties, tasks, and responsibilities associated with providing notice and administering the Settlement. *Id*. ¶ VI. The Settlement Administrator will sign retainer

---

[3] *See id* at ¶ 28, defining the Net Settlement Amount as "the Settlement Fund after payment of all attorneys' fees, costs, and the Service Award, as approved by the Court."
[4] *See* https://www.nclc.org (last accessed on May 14, 2025).
[5] *See* https://www.analyticsllc.com/ (last accessed May 14, 2025).

and confidentiality agreements which will obligate it to maintain the confidentiality of Settlement Class Members' personal identifying information and not to use such information for any purposes other than the administration of this settlement. *Id*. The Settlement Administrator will provide Class Counsel and Defense Counsel periodic reports regarding requests for exclusions or objections. *Id*. The Settlement Administrator will also be required to destroy all data related to the Settlement twelve (12) months after the Final Report is submitted to the Court. *Id*.

### VI.    Class Certification under Fed. R. Civ. P. 23

### A.    Legal Standards

Rule 23 of the Federal Rules of Civil Procedure governs traditional class actions. The Supreme Court has noted that the drafters of Rule 23 intended class actions to vindicate the rights of a group of injured persons who otherwise would be without sufficient strength or inclination to bring suit on an individual basis. *See Amchem Prods. Inc. v. Windsor*, 512 U.S. 591 (1997). The Rule requires that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."

To obtain class certification under Rule 23, Plaintiff must demonstrate the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *Amchem*, 521 U.S. 619–20. "To approve a class settlement, the class must be certifiable. That means it must satisfy Rule 23(a) and (b)." *Moon v. E.I. du Pont de Nemours & Co*., No. 19-cv-1856, 2023 WL 1765565, at *1 (D. Del. Feb. 3, 2023). The proposed settlement may be taken into consideration when evaluating whether these requirements are met. *Halley v. Honeywell Int'l, Inc*., 861 F.3d 481, 487 (3d Cir. 2017).

With respect to Rule 23(a), there are over 14,500 potential class members and joinder

would be impractical. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (if "the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). There are multiple common questions of fact relating to the Incident, including whether TradeZero had a duty to protect Plaintiff's and Class members' PII, whether TradeZero was negligent in collecting and storing Plaintiff's and Class members' PII, and whether TradeZero breached a fiduciary duty to Plaintiff and the proposed Class. *See* Compl. ¶ 94. These common questions apply equally to every Settlement Class Member and satisfy the commonality requirement. *See Stewart*, 275 F.3d 227 ("[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." (citation omitted)). Plaintiff Lim's experiences are typical of the other Settlement Class Members. Prior to the Incident, she was a TradeZero customer, and her data may have been impacted during the Incident. As a result, her private information, including social security number, driver's license number, banking details, and other sensitive identifiers may have been exposed to bad actors and/or the dark web. As above, each Class Member received the same notice letter informing them that their PII was included in the Incident. The same event affected both the named Plaintiff and the Class in the same manner and, accordingly, Plaintiff's claims are "typical." *See Stewart*, 275 F.3d 227–28 (claims are typical if the "same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." (citation omitted)). To satisfy the adequacy requirement, Plaintiff must show that her interests are not antagonistic to those of the class, and the same strategies that will prove their claims also apply to the class. Here, there are no antagonistic or conflicting interests between Plaintiff and her counsel and the absent class members; and Plaintiff and her counsel have vigorously prosecuted the action on behalf of the class and will continue to do so. *See Moon*, 2023 WL 1765565, at *2 (counsel have "diligently

pursued the claims on behalf of the class.").

Once this threshold showing is made, the claims must fit into one or more of the categories of permissible class actions described in Rule 23(b). Under Rule 23(b)(3), Plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that "a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 316 (D. Del. 2012). The predominate questions involved include whether Defendant used reasonable data security measures to protect consumers' PII. That question can be resolved, for purposes of settlement, using the same evidence for all Members of the Settlement Classes, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. There are no individual issues that would predominate over the issues common to the Named Plaintiff and the Settlement Class Members.

A class action is superior to other methods of adjudicating this matter under Fed. R. Civ. P. 23(b)(3). First, having all the Settlement Class Members' claims adjudicated in one lawsuit is far more efficient for the Court and the Parties than requiring Settlement Class Members to initiate 14,500 individual lawsuits. Second, there are no other existing lawsuits by any Settlement Class Members concerning issues like this litigation. Third, the District of Delaware is the most appropriate forum for this matter since TradeZero maintains its principal place of business in Delaware. Finally, there should be no difficulties in managing the proposed case as a class action since certification is being sought in the context of a settlement. Thus, the superiority requirement is met because the class action device achieved significant efficiencies compared to individual actions.

**B.**    **Certification of the Settlement Class Under Fed. R. Civ. P. 23 is Appropriate**

Plaintiff requests the Court certify the following class under Rule 23: "all individuals residing in the United States whose PII was affected by the Incident." *See* Settlement Agreement, ¶ 47. The Named Plaintiff has alleged, and the evidence adduced during discovery and during the mediation process shows that the proposed Settlement Class satisfies the requirements of class certification. As above, Plaintiff has addressed each Rule 23 element demonstrating that the class may properly be certified. *Moon*, 2023 WL 1765565, at *1 ("[t]o approve a class settlement, the class must be certifiable."). "In deciding whether to grant preliminary approval of a proposed class action settlement, the court is required to determine only whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorney, and whether it appears to fall within the range of possible approval.'" *In re Wilmington Tr. Sec. Litig.*, No. 10–cv–0990, 2018 WL 3369674, at *4 (D. Del. July 10, 2018).

Once the class is "certified for purposes of settlement," the case may be settled so long as the settlement is "fair, reasonable, and adequate." *Moon*, 2023 WL 1765565, at *2; *In re Wilimington Tr. Sec. Litig.*, 2018 WL 3369674, at *4 (same). Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) requires the court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Plaintiff submits that the proposed Settlement is procedurally and substantively fair, reasonable, adequate, and is not a product of collusion.[6] Here, the Parties agreed to a substantial settlement of $325,000, which provides multiple cash payments and non-monetary benefits to Class Members. The settlement was reached after multiple substantive settlement conversations, demonstrating that the agreement was the result of an arm's length negotiation. During the negotiations the Parties each have considered the strengths and weaknesses of their position and that of the opposing party. Moreover, the relief is adequate in that the settlement amount is commensurate with other data breach settlements and within Plaintiff's projected damages. The settlement places all Settlement Class Members on an equal footing *vis- à-vis* their settlement award and *pro rata* shares. Plaintiff's counsel may request a one-third fee and there are no other agreements concerning the settlement.

Because each of the prerequisites for class certification under Fed. R. Civ. P. 23 is met, the Named Plaintiff respectfully requests that the Court certify the Settlement Class.

**C.      The Court Should Appoint Sokankelly Lim as Class Representative**

"To appoint Lead Plaintiff as Class Representative, a court must find that she will "fairly and adequately protect the interests of the class." *Guidry v. Wilmington Tr.*, 333 F.R.D. 324, 330 (D. Del. 2019). *See also Yarger*, 285 F.R.D. at 318–19 ("[t]he basic factual circumstances supporting plaintiffs' claims are shared by the rest of the proposed class."); *Moon*, 2023 WL 1765565, at *2.

---

[6] Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no such agreements here.

As explained above, Plaintiff has actively participated in this litigation since inception. Her claims are both adequate and typical of the claims which would be made by other Settlement Class Members. Accordingly, Plaintiff requests the Court to appoint her as Class Representative.

### D.    Appointment of Counsel for the Settlement Classes

The Court should appoint Marc Edelson, Edelson Lechtzin LLP, and Scott M. Tucker, Chimicles Schwartz Kriner & Donaldson-Smith LLP, as Plaintiff's Counsel for the Settlement Class. Rule 23 required "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1). Courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Rule 23(g)(1)(A); *Yarger*, 285 F.R.D. at 320 (class counsel "are experienced class action attorneys who have been successful in prosecuting class actions and complex civil litigation in courts throughout the country.").

Here, proposed Class Counsel have extensive experience prosecuting class actions and other complex cases, including data breach cases. *See* Exhibit B, Declaration of Marc H. Edelson ("Edelson Decl.") ¶ 3; Exhibit C, Declaration of Scott M. Tucker ('Tucker Decl.") ¶ 3. As discussed above, proposed Class Counsel have worked extensively on identifying and investigating the claims here, know the law regarding class actions and data breach class actions, specifically, and have shown that they possess the resources available to represent the Class. Accordingly, the Court should appoint Marc Edelson, Edelson Lechtzin LLP, and Scott M. Tucker Chimicles Schwartz Kriner & Donaldson-Smith LLP as Class Counsel.

### E.    Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, Plaintiffs request that the Court appoint Analytics, LLC to serve as the Settlement Administrator. Analytics, LLC has a trusted and proven track record of supporting thousands of class action administrations and distributing billions of settlement funds. Exhibit D Analytics Decl. ¶ 1. Notice and administration are expected to not exceed $25,000.00 and will be deducted from the overall settlement fund. *Id. See also* Settlement Agreement ¶¶ 46; VI.3.l.

### F.    The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably, and must describe the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.

Here, the Parties have agreed to a robust notice program (the "Notice Program") to be administered by a well-respected third-party class administrator, Analytics LLC (the "Administrator"), which will use all reasonable efforts to provide direct and individual notice to each potential member of the Settlement Class via email notice, and as appropriate, U.S. mailed notice for those that cannot be contacted via email, along with a reminder notice. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members

of their rights and options under the settlement, including detailed instructions on how to make a claim, object to the settlement, or opt out of the settlement. *See* Settlement Agreement Exs. 1-3.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the Notice and Claim Form approved by the Court, as well as the Settlement Agreement and other key documents. The Settlement Administrator will also establish a toll-free helpline and P.O. box available to respond to Settlement Class Members' questions concerning the settlement.

The Parties have thus negotiated a notice program that is reasonably calculated under the circumstances to apprise Members of the Settlement Class of the pendency of the Action and afford them an opportunity to present any objections. Because this Notice Plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it.

Plaintiff submits that the Court should find that the notices of the class action settlement submitted by the Parties are adequate. *See In re Wilmington Tr. Sec. Litig.*, No. 10–cv–0990, 2018 WL 3369674, at *6 (D. Del. July 10, 2018) (finding the settlement notice program satisfies Rule 23(e).)

## VII.   Preliminary Approval of the Settlement is Appropriate

The ultimate decision whether to approve a proposed settlement under this standard "is left to the sound discretion of the district court." *Halley*, 861 F.3d at 488. In addition to the Rule 23 (e) (2) requirements addressed above, the Third Circuit sets out appropriate factors to be considered when determining the fairness of a proposed settlement. *See Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). These additional nine factors include: (1) the complexity, expense, and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the

18

risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. "This settlement checks all these boxes." *Moon*, 2023 WL 1765565, at *2.

1.      The Complexity, Expense, and Likely Duration Of The Litigation.

Even though Plaintiff believes that her claims are strong, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 14,500 individuals, a complicated and technical factual overlay, and a defendant with the resources to litigate through trial if necessary. While putative class actions involve a high level of risk, expense, and complexity, there is also a "strong presumption in favor of voluntary settlement agreements that promote[s] the amicable resolution of disputes, conserve[s] judicial resources, and benefit[s] the parties by avoiding the costs and risks of a lengthy and complex trial. This presumption is especially strong in class actions." *Rescigno v. Statoil USA Onshore Props., Inc*., No. 20-2431, 2024 WL 4249491, at *5 (3d Cir. Sept. 20, 2024), cert. denied sub nom. *Adams v. Resigno*, No. 24-750, 2025 WL 951156 (U.S. Mar. 31, 2025). Courts in this Circuit have preliminarily approved settlements in the data breach context. *See, e.g., In re Philadelphia Inquirer Data Sec. Litig*., No. 24-cv-2106, 2024 WL 4582881, at *10 (E.D. Pa. Oct. 25, 2024) (finding *Girsh* factors weigh in favor of approval of the settlement agreement); *In re Onix Grp., LLC Data Breach Litig*., No. 23-cv-2288, 2024 WL 3015528, at *9 (E.D. Pa. June 14, 2024) (finding first *Girsh* factor "easily met when "this is a complex class action lawsuit regarding damages from a data breach, an area of law that has not yet been fully developed." And, if the litigation were to continue, plaintiffs and the settlement class would face many challenges and expenses associated with class action litigation,

including obtaining class certification, briefing motions for summary judgment, obtaining and defending expert opinions, and maintaining class certification through trial.") (internal citations and quotations omitted).

Here, continuing the litigation through depositions, motions to compel, motions for class certification, motions for summary judgment, and potential trial would significantly increase expenses to both parties and substantially extend the duration of the case.

2.     The Reaction of the Settlement Class to the Settlement.

Because notice has not yet been given, this factor is not yet implicated.

3.     The Stage of The Proceedings and the Amount of Discovery Completed.

This litigation was concluded at an early stage. Prior to negotiating a settlement, TradeZero provided Plaintiff with information that enabled Plaintiff's Counsel in conjunction with their independent research and review of settlements in similar cases, to formulate an appropriate settlement demand. These materials were sufficient for the Parties to conduct informed negotiations. *See e.g., Barletti v. Connexin Software, Inc*., No. 22-cv-04676, 2024 WL 1096531, at *7 (E.D. Pa. Mar. 13, 2024) (finding third *Girsh* factor satisfied when the "parties entered negotiations with a comprehensive understanding of the merits of this case and agreed to the settlement with a full understanding of its financial position. This factor weighs in favor of approval.").

4 & 5.   The Risks of Establishing Liability and Damages.

The Named Plaintiff is confident she could establish liability on her claim. However, data breach cases are among the riskiest and most uncertain of all class action litigations, making settlement the more prudent course where, as here, a reasonable one can be reached. The court's opinion in *In re Philadelphia Inquirer Data Sec. Litig*., succinctly describes the hurdles Plaintiff

Lim faces in continuing to litigate this matter.

> The fourth and fifth factors—risks of establishing liability and damages—also counsel in favor of approving the settlement. Plaintiffs' counsel demonstrated that there is a risk of establishing liability, and in turn, damages, because this case involves a number of open questions, including whether Defendant owed a duty to the class to safeguard sensitive information, whether Defendant breached that duty, whether the compromised information was ever actually viewed by bad actors, whether Defendant violated state consumer protection laws, whether Defendant's conduct was the proximate cause of the breach, and the extent to which the class is entitled to recovery.

*In re Philadelphia Inquirer Data Sec. Litig.*, 2024 WL 4582881, at *9.

### 6. The Risks of Maintaining the Action Through Trial.

The Court has not yet certified a class. If the case were to proceed through trial, Plaintiff would encounter risks in obtaining and maintaining certification of the class. TradeZero would undoubtedly oppose class certification if the case were to proceed. Thus, Plaintiff necessarily risks losing class action status. "The likelihood of maintaining class certification if the action were to proceed to trial—weighs in favor of approval because there "will always be a 'risk' or possibility of decertification." *In re Philadelphia Inquirer Data Sec. Litig.*, 2024 WL 4582881, at *10 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998) (a district court may decertify or modify a class at any time during the litigation)).

### 7. The Defendant's Ability to Withstand a Greater Judgment.

TradeZero's ability to withstand a greater judgment should not preclude the Court's approval of the settlement agreement. As above, the proposed settlement provides substantial cash benefits to the Settlement Class. *See* Section V.C., *supra*. Thus, the seventh *Girsh* factor is of lower significance "because the settlement achieved immediate and tangible benefit for the class." *Halley*, 861 F.3d at 490.

<u>8 & 9.  The Range of Reasonableness of the Settlement Fund in light of the Best Possible<br>Recovery and Risks of Litigation</u>.

"The last two Girsh factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d at 322.

The Settlement amount is well within the range of reasonableness. Plaintiff believes the Settlement is commensurate with that of other data breach settlements and well within the damages that could have been awarded on the claims at trial. Further, the risks of litigation are substantial. TradeZero could prevail on any one of its defenses regarding class certification, liability, or damages. In that case, Plaintiff and the Settlement Class would receive nothing. Given these risks, the Settlement is within the range of reasonableness. The Court should conclude that the settlement amount here is "reasonable in light of the best possible recovery and the attendant risks of litigation—little or no recovery at all." *Halley*, 861 F.3d at 490.

Plaintiff submits that the Settlement here satisfies both the Rule 23 (e) and *Girsh* factors for the settlement of a Rule 23 class action.

**VIII.   Conclusion**

Plaintiff respectfully requests that the Court certify the Settlement Class, for settlement purposes only, under Fed. R. Civ. P. 23, preliminarily approve the Settlement Agreement, order that Notice of the Settlement and Claim Forms be sent to the Settlement Class Members and set a hearing date for Final Settlement Approval.

Respectfully submitted,

| Dated: May 15, 2025 | |
|---|---|
| | By:  */s/ Scott M. Tucker*<br>Scott M. Tucker<br>Chimicles    Schwartz    Kriner    &<br>Donaldson-Smith LLP<br>2711 Centerville Road<br>Suite 201<br>Wilmington, DE 19808<br>(302) 656-2500<br>Fax: (302) 656-9053<br>EmailScoottucker@chimicles.com<br><br>Marc  H.  Edelson  (*Pro  Hac  Vice*<br>pending)<br>Edelson Lechtzin LLP<br>411 S. State Street, Suite N-300<br>Newtown, PA 18940<br>Telephone: (215) 867-2399<br>Facsimile: (267) 685-0676<br>medelson@edelson-law.com<br><br>*Counsel for Plaintiff and the Proposed*<br>*Classes* |