**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SOKANKELLY LIM, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br>vs.<br><br>TRADEZERO AMERICA, INC.<br><br>Defendant. | CIVIL ACTION<br><br>NO. 1:24-cv-01196-GBW<br><br>Filing Date: July 7, 2026. |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND MEMORANDUM OF LAW IN SUPPORT PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiff Sokankelly Lim ("Plaintiff"), individually and on behalf of the Settlement Class, by and through her undersigned attorneys, respectfully moves the Court for an Order granting Final Approval of the Class Action Settlement entered into between Plaintiff, on behalf of herself and the Settlement Class (defined below), and Defendant TradeZero America, Inc., as memorialized in the Settlement Agreement, dated May 15, 2025, D.I. No. 11-1, final certification of the Class pursuant to Federal Rules of Civil Procedure 23, and for entry of the Final Approval Order and Final Judgment. The Settlement Agreement creates an all cash non-reversionary fund of $325,000.00 that Defendant has agreed to pay under the terms of the Settlement to benefit the Settlement Class, and which will be used to make payments to Settlement Class Members (the "Participating Class Members"). Defendant does not oppose entry of the Final Approval Order.

As set forth below, the Settlement satisfies the requirements for final approval under Third Circuit law and Fed. R. Civ. P. 23, including the Court's assessment of fairness, adequacy, and reasonableness, consideration of the *Girsh* factors, the requirements of Rule 23(e)(2) and the notice program, discussed *infra*. For the reasons stated herein, the Court should now finally certify the

Settlement Class and finally appoint Plaintiff as Class Representative and Interim Class Counsel as final Class Counsel, and finally approve the settlement as fair, reasonable and adequate.

## I. Preliminary Statement

The Settlement is fair, reasonable, and adequate, as the Court recognized when it granted preliminary approval. As is discussed further, *infra*, this settlement provides an excellent benefits package for all Settlement Class Members who choose to submit a claim. In accordance with the Court's Order approving the Notice plan, *id. at* D.I. No. 17, ¶ 7, the Settlement Administrator sent 14,343 Notices to Class Members. *See* Declaration of Kari L. Schmidt ("Schmidt Decl.") at ¶ 7. Plaintiff believes that Notice was effectively sent to over 87.8% of all Class Members. *Id. at* ¶ 13. The Deadline to Submit Claims was June 15, 2026. Further, there were 741 timely claims received. This represents a 5.16% response rate, which is consistent with claim rates in other data breach class actions. *Id. at* ¶ 15. The deadline to opt out of the class or to object to the settlement has now passed. There have been no objectors to the settlement and only one potential class member has requested exclusion from the settlement. No Class Members have objected to the request for attorneys' fees. *Id. at* ¶ 14.

## II. Factual and Procedural Background

To promote judicial efficiency and avoid unnecessary repetition, Plaintiff respectfully refers the Court to, and hereby incorporate by reference, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, D.I. No. 11, and Plaintiff's Application for Attorneys' Fees, Costs and Service Award, D.I. No. 18, filed April 28, 2026, along with the accompanying exhibits for the detailed factual and procedural background underpinning this case.

## III. Settlement Negotiations

This settlement is the result of arm's length negotiations between the Parties after multiple substantive settlement conversations. *See* Joint Decl., D.I. No. 18-2, at ¶¶ 9-13. Plaintiff's Counsel conclude that the Settlement set forth in the Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class. TradeZero generally denies the allegations; however, it agreed to the settlement to avoid further litigation and cost and expenses, distractions, burden, expense, relating to protracted litigation. *See* S.A., ¶ 8.

## IV. Settlement Terms

The Settlement Agreement provides that Defendant will make a total Settlement Payment of $325,000. This amount includes all Individual Settlement Payments, Service Awards, Claims Administrator Costs, Class Counsel Attorneys' Fees and Costs. The Settlement amount is a fair, adequate, and reasonable resolution of this claim, given the anticipated costs and delays as outlined above. It is well within the range of potential outcomes for the Plaintiff and the Settlement Class Members, given the potential issues with litigating the case through trial.

### A. Settlement Class

The Settlement Class is defined as "all individuals residing in the United States whose PII was affected by the Incident." *See* S.A., ¶ 47. Excluded from the Settlement Class are "(1) the Judge presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former officers and directors; and (3) Settlement Class Members who submit a request to opt-out prior to the Opt-Out Deadline." *Id.*

### B. Releases

In exchange for receiving payments from the Settlement, the Settlement Class Members will agree to release Defendant from "any and all liabilities, rights, claims, actions, causes of

action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Incident; (b) the Action; or (c) which could have been asserted in the Action. *See* S.A. § XIII.

**C. Compensation to Class Members**

The Settlement provides significant relief to participating Class Members. The Settlement Agreement establishes three potential benefits for Settlement Class members. It provides cash compensation for Documented Losses for Settlement Class members who experienced financial loss, up to $10,000. *See* S.A. at § IV.1.a. Next, Settlement Class members may elect to receive Time Compensation, for their time and effort undertaken to secure their credit, up to 5 hours. *Id.* § IV.1.b. Last, Settlement Class members are also entitled to three years of no-cost credit protection coverage. *Id.* § IV.1.d. Alternatively, they may choose to receive a cash payment in lieu of the credit protection. *Id.* § IV.1.c. If the total claims exceed the settlement amount, claims would be subject to a *pro rata* reduction. *Id.* § IV.1.e. Further, should the total claims not exhaust the settlement fund, the remaining funds would be distributed, *pro rata*, to those Valid Claimants who have already received their Cash Payments.[1] *Id.* § XII.

**D. Notice**

The Court provisionally certified the Settlement Class, concluded that the Settlement is fair, reasonable, and adequate and found that the proposed manner of notice was the "best notice practicable under the circumstances." D.I. 17 *at* ¶ 7. On March 16, 2026, Analytics, LLC ("Analytics"), the Settlement Administrator, began sending individual direct notice to 14,343

---

[1] Assuming there are at least 10 Valid Claimants, each would receive at least $25. *Id.*

Settlement Class Members by mailing Postcard Notices via USPS first class mail. *See* Schmidt Decl. at ¶ 7. When postcard notices were returned as undeliverable, Analytics ran address verification searches on those addresses and was able to successfully re-send postcard notices to each of the Settlement Class Members. *Id. at* ¶ 12. Notice was effectively provided to 12,592 Settlement Class Members, or over 87% of all Settlement Class Members. *Id. at* ¶ 13. Additionally, Analytics maintained a settlement website, https://www.tradezerodatasettlement.com, which provided relevant documents, including the Long Form Notice, Claim Form, Complaints, Settlement Agreement, Motion for Preliminary Approval, and Preliminary Approval Order are posted on the settlement website. *Id.* at ¶ 8. Settlement Class Members could also file an online Claim Form through the settlement website. *Id.* In addition, the settlement website includes relevant dates, answers to frequently asked questions, instructions for how members of the Settlement Class could have opted-out from, or objected to, the Settlement, contact information for the Claims Administrator, and other case-related information. *Id.* Settlement Class Members accessed the Settlement Website more than 1,450 times. *Id.* Analytics also provided contact information for Settlement Class Members to submit questions or requests for additional information. *Id. at* ¶¶ 8-10. There are both regular mail and email addresses provided.

Analytics established a toll-free telephone number where Class Members are apprised of their rights and options in the Settlement. *Id. at* ¶ 9. The toll-free system is accessible 24 hours per day, 7 days per week. *Id*. It provides responses to frequently asked questions and provides essential information regarding the Settlement. *Id*. In addition, callers were able to leave a message for the Settlement Administrator, and Analytics would return the call. *Id.*

The deadline to opt out of the class or to object to the settlement was May 15, 2026. There have been no objectors to the settlement and one potential class member has requested exclusion

from the settlement. *Id. at* ¶ 14. No Class Members have objected to the request for attorneys' fees.

The claims deadline expired on June 15, 2026. The Settlement Administrator reports that there were 741 timely claims received. *Id. at* ¶ 15. Among those claims, 9 Class Members requested reimbursement for documented losses suffered as a result of the Data Security Incident (Cash Payment A), 701 Class Members elected to receive Credit Monitoring Equivalent (Cash Payment B) and 40 Class Members requested to receive free Credit Monitoring. *Id. at* ¶¶ 17-19. The *pro rata* credit monitoring cash equivalent is estimated to be $219.85. *Id. at* ¶ 20.

i. ***Service Awards***

Subject to the Court's approval, Plaintiff Lim will receive five thousand dollars ($5,000) as a service award for her efforts in prosecuting the case. *Id. at* § XI.1. *See also* D.I. No. 18 at 12; D.I. No. 18-2 at ¶ 9. Plaintiff Lim worked diligently with Class Counsel to prosecute the matter. This involved multiple extended phone calls with Class Counsel prior to filing the Complaint wherein Lim described her interactions with Defendant's agents, her interactions with Defendant prior to the Data Incident, the inclusion of her PII among Defendant's account information and the subsequent steps she took to determine what PII was exfiltrated and protect herself from identity theft. *Id.*

ii. ***Attorneys' Fees and Costs***

Subject to the Court's Final Approval Order, Class Counsel will receive an award of attorneys' fees in an amount of one-third (1/3) of the Gross Settlement Amount ($108,342), which will compensate Class Counsel for all work performed in the Action. See also, D.I. 18. Also subject to the Court's Final Approval Order, Class Counsel will be reimbursed for their out-of-pocket costs ($700.45) from the Gross Settlement Amount. *Id*. *See also* D.I. No. 18-2 at ¶¶ 22-25. The one-third fee is significantly less than Class Counsel's lodestar. In addition, Analytics reports that

it incurred Notice and Administration Expenses of $26,986 to be deducted from the overall settlement fund. Schmidt Decl. at ¶ 21. *See also* Settlement Agreement ¶¶ 46; VI.3.l.

iii. ***Settlement Awards***

Settlement Class Members will receive a payment out of the Net Settlement Fund within 75 days of the Effective Date.[2] *Id. at* § IX.11. The Settlement Administrator will determine eligibility and the amount of Settlement awards to be paid to the Settlement Class Members. *Id. at* § IX. Any unclaimed Settlement Funds, subject to Court approval, will be donated to *cy pres* recipient National Association of Consumer Advocates. *Id. at* § XII.

iv. ***Settlement Administrator***

The Settlement Administrator performed all the duties, tasks, and responsibilities associated with providing notice and administering the Settlement. *Id. at* § VI. *See also* Joint Decl. ¶ 15; Schmidt Decl., *generally*. The Settlement Administrator will maintain the confidentiality of Settlement Class Members' personal identifying information and will not to use such information for any purposes other than the administration of this settlement. *Id*. The Settlement Administrator provided Class Counsel and Defense Counsel with periodic reports regarding requests for exclusions or objections. *Id*. The Settlement Administrator will also be required to destroy all data related to the Settlement twelve (12) months after the Final Report is submitted to the Court. *Id*.

## IV. LEGAL ARGUMENT

### A. The Court Should Finally Certify the Class for Settlement Purposes

To obtain class certification under Rule 23, Plaintiff must demonstrate the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. In the Third Circuit, there is a "strong presumption in favor of voluntary settlement agreements" that promote

[2] *See id at* § II.2.

the amicable resolution of disputes, conserve judicial resources, and benefit the parties by avoiding the costs and risks of a lengthy and complex trial." *Rescigno v. Statoil USA Onshore Props., Inc.*, No. 20-cv-2431, 2024 WL 4249491, at *5 (3d Cir. Sept. 20, 2024), cert. denied sub nom. *Adams v. Resigno*, 145 S. Ct. 1469 (2025). *See also Ehrheart v. Verizon Wireless,* 609 F.3d 590, 593 (3d Cir. 2010) ("a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation."). A class action may be settled only with court approval after a hearing and a finding that the settlement is fair, reasonable, and adequate to the class. Fed. R. Civ. P. 23(e); *Miller v. Del-One Fed. Credit Union*, No. 21-cv-1433, 2025 WL 1359033, at *2 (D. Del. May 9, 2025) (citing Fed. R. Civ. P. 23(e)(2)). The court must determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under Rule 23(e). *Miller*, 2025 WL 1359033, at *2 (concluding that "all the requirements are met" and the proposed settlement was "fair, reasonable, and adequate."); *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 487 (3d Cir. 2017) (same); *In re Philadelphia Inquirer Data Sec. Litig.*, No. 24-cv-2106, 2025 WL 845118, at *4 (E.D. Pa. Mar. 18, 2025) (same) (quoting *In re NFL Players Concussion Injury Litig.* ("NFL II"), 775 F.3d 570, 581 (3d Cir. 2014)).

### B. Class Certification under Fed. R. Civ. P. 23

**Rule 23 (a) Requirements**.

"To approve a class settlement, the class must be certifiable. That means it must satisfy Rule 23(a) and (b)." *Moon v. E.I. du Pont de Nemours & Co.*, No. 19-cv-1856, 2023 WL 1765565, at *1 (D. Del. Feb. 3, 2023). "To satisfy Rule 23(a), the class must show by a preponderance of the evidence that (1) it "is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class." *Miller*, 2025 WL 1359033, at *2 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

For settlement purposes, the Settlement Class continues to satisfy Rule 23(a) and (b)(3). D.I. No. 17, *at* 2 (finding Rule 23(a) and (b)(3) requirements were satisfied). In conducting its preliminary approval determination the Court found that the requirements of Rule 23(a) were satisfied. Numerosity is met given the Class size of approximately 14,343 potential class members, each of whom received TradeZero's notification letter to affected individuals. SA, ¶ 2. *See* D.I. No. 17, *at* 2; *Miller*, 2025 WL 1359033, at *2 (finding that over ten thousand class members easily satisfies the numerosity requirement); *In re Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118, at *4 ("numerosity is generally satisfied if there are more than 40 class members.") (citations omitted). Likewise, the class is ascertainable as it relies on TradeZero's records to determine class members' identities. *Id*. 2025 WL 845118, at *4 ("the class here is ascertainable because the parties used defendant's records to determine the exact number and identities of individuals whose data could have been compromised.").

Commonality and predominance are satisfied because all members share claims arising out of the same alleged cyberattack and data incident. *D.I. No. 17, at* 2. *See Reyes v. Netdeposit, LLC,* 802 F.3d 469, 486 (3d Cir. 2015) ("Commonality does not require perfect identity of questions of law or fact among all class members."); *Miller*, 2025 WL 1359033, at *2 (finding "financial injury from overdraft fees" when defendant "used the same uniform account agreements ... for all customers," satisfied the commonality requirement.).

Typicality is satisfied because "like the class members, the security of their data was compromised as a result of the data breach suffered by [defendant] and its customers." *Bianucci v. Rite Aid Corp*., No. 24-cv-3356, 2025 WL 2166015, at *7 (E.D. Pa. July 30, 2025); *Miller*, 2025

WL 1359033, at *2 (finding typicality satisfied when plaintiff "was charged the same fees as everyone else in the class, making the facts of her claim and the law governing it the same as the other class members' claims."). *See also In re Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118, at *5 (each class member's claim "stems from [defendant's] security measures and whether they were adequate to protect the plaintiff's sensitive data.") (citing *In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2023 WL 6690705, at *4 (E.D. Pa. Oct. 12, 2023); *Currie v. Joy Cone Co*., No. 23-cv-764, 2024 WL 3157870, at *5 (W.D. Pa. June 25, 2024) (finding a "strong similarity between claims and defenses for [plaintiff] and the class, because all class members are proceeding on the same legal theory with respect to the [data incident]."). Adequacy is satisfied because Plaintiff Lim and Interim Class Counsel have no conflicts with the Class and have vigorously prosecuted the action. *See Bianucci*, 2025 WL 2166015, at *7 (typicality and adequacy "tend to merge."); *Miller*, 2025 WL 1359033, at *2 (plaintiff's claims are typical of the other class members' claims."); *In re Philadelphia Inquirer Data Sec. Litig*., 2025 WL 845118, at *5 (plaintiffs' interests and those of the class "are aligned in attempting to prove the allegations in the complaint and to establish [defendant]'s liability.). Moreover, Interim Class Counsel have extensive experience prosecuting class actions and other complex cases, including data breach cases. *Id*. 2025 WL 845118, at *6 (the "class's interests have been advanced by experienced and dedicated counsel."); *Miller*, 2025 WL 1359033, at *2 (plaintiff's counsel are well qualified and have litigated vigorously so far."). *See also* Fed. R. Civ. P. 23(a)(4).

These factors satisfy Rule 23(a)'s requirements.

**<u>Rule 23 (b) Requirements</u>**

With respect to Rule 23(b)(3), the Court found "common questions of law and fact predominate" and "certification of the Settlement Class is superior to other available methods for

the fair and efficient resolution of the claims." D.I. No. 17, *at* 2. Given that a trial would turn on common evidence regarding whether TradeZero had a duty to protect class members' PII and whether TradeZero's alleged negligence in collecting and storing its employees' and customers' PII breached that duty, the Rule 23 (b) requirements remain satisfied. *See, e.g., Miller*, 2025 WL 1359033, at *3 (finding plaintiff's "claims all turn on whether [defendant]'s uniform practices violated Regulation E and Delaware law and further that "[f]orcing the class members to litigate individually would create "difficult, if not [practically] insurmountable barriers to relief and burdens on courts."). *See also In re Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118, at *6 ("In this data breach litigation, [d]efendant's conduct is common to all class members, and all class members were harmed by that conduct" and ("many potential plaintiffs would likely have small claims that would be impractical to litigate on an individual basis.").

Plaintiff respectfully submits that the Court should reaffirm its finding at the preliminary approval stage that Rule 23 (a) and (b) (3) requirements are satisfied and grant final certification to the class.

**C. The Third Circuit's Settlement Approval Factors**

The Court should next determine whether the Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e). "When reviewing a proposed settlement, courts in this circuit apply a presumption of fairness as long as certain conditions are satisfied." *Rescigno*, 2024 WL 4249491, at *5. *See also In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 323 (3d Cir. 2019). These include whether (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Rescigno*, 2024 WL 4249491, at *5; *In re Warfarin*, 391 F.3d 516, 535 (3d Cir. 2004). *See also Miller*, 2025 WL 1359033, at *4-

*5 (discussing significant factors to be considered pursuant to Rule 23 (e)'s 2018 revisions for final approval of the settlement.).

As discussed throughout, Plaintiff has diligently pursued this litigation. Both Parties were represented by counsel with specific experience with data breach litigation. The Parties participated in informal discovery and each have considered the strengths and weaknesses of their position and that of the opposing party. Informal discovery enabled Counsel to determine the class size and distribution, and formulate a settlement demand. Moreover, the relief is adequate in that the settlement amount is commensurate with other data breach settlements and within Plaintiff's projected damages. The settlement places all Settlement Class Members on an equal footing *vis-a-vis* their settlement award and *pro rata* shares. The Settlement administration process is described at § X of the Settlement Agreement and "the distribution plan is fair, reasonable and adequate" for the Class. And, no class member has either objected nor opted out of the settlement. Accordingly, the Court should apply a presumption of fairness when deciding whether to grant its final approval.

In addition to the Rule 23 (e) (2) requirements, the Third Circuit also sets out appropriate factors to be considered when determining the fairness of a proposed settlement. *See Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975). These nine factors include: (1) the complexity, expense, and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

litigation. "This settlement checks all these boxes." *Moon v. E.I. du Pont de Nemours & Co.*, 19-cv-18562023 WL 1765565, at *2 (D. Del. Feb. 3, 2023).

1. Complexity, Expense, and Likely Duration.

The first *Girsh* factor asks the Court to evaluate the complexity, expense, and likely duration of litigation. *In re Zoom Video Commc'ns, Inc. S'holder Derivative Litig*., No. 20-cv-797, 2025 WL 2174674, at *3 (D. Del. July 31, 2025) (Williams, J.) (discussing the "probable costs, in both time and money, of continued litigation."). Continuing this litigation through trial would require additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial.

Even though Plaintiff Lim believes that her claims are strong, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 14,343 individuals, a complicated factual overlay, and a Defendant with the resources to litigate through trial if necessary. Courts in this Circuit have preliminarily approved settlements in similar data breach matters. *See, e.g., In re Philadelphia Inquirer Data Sec. Litig*., 2024 WL 4582881, at *10 (E.D. Pa. Oct. 25, 2024) (finding *Girsh* factors weigh in favor of approval of the settlement agreement); *In re Onix Grp., LLC Data Breach Litig*., No. 23-cv-2288, 2024 WL 3015528, at *9 (E.D. Pa. June 14, 2024) (finding first *Girsh* factor "easily met when "this is a complex class action lawsuit regarding damages from a data breach, an area of law that has not yet been fully developed. And, if the litigation were to continue, plaintiffs and the settlement class would face many challenges and expenses associated with class action litigation, including obtaining class certification, briefing motions for summary judgment, obtaining and defending expert opinions, and maintaining class certification through trial.") (internal citations and quotations omitted).

Here, continuing the litigation would significantly increase expenses to both parties and

substantially extend the duration of the case. Thus, the complexity, expense, and likely duration of the litigation favor final approval of the Settlement.

2. <u>The Reaction of the Settlement Classes to the Settlement</u>.

This factor "attempts to gauge whether members of the class support the settlement." *In re Warfarin*, 391 F.3d at 536. "As a general rule, a small number of objectors weighs in favor of approval." *In re Zoom Video Commc'ns, Inc. S'holder Derivative Litig*., 2025 WL 2174674, at *4. As reported by the Settlement Administrator, the notice program reached approximately 87.8% of the Class. No Settlement Class Members have objected to the Settlement and only one has requested exclusion. Additionally, as of June 15, 2026, Analytics received 741 claim forms. In total there was a 5.16% claims rate, which is well within the range of claim rates in other data breach class actions. *See* Schmidt Decl. ¶¶ 13, 15-16. *See, e.g., Gravley v. Fresenius Vascular Care, Inc*., No. 24-cv-1148, 2025 WL 2099219, at *5 (E.D. Pa. July 24, 2025) ("The claims rate of 3.83% is a relatively high response rate in data breach class actions); *In re Wawa, Inc. Data Sec. Litig*., 141 F.4th 456, 476 (3d Cir. 2025) (claims rate of 2.56% is comparable to other low-harm data breach class action settlements). This factor favors approval.

3. <u>Stage of Proceedings and Discovery Completed</u>.

"This factor considers the degree of case development achieved before settlement negotiations to determine whether class counsel had an adequate appreciation of the merits of the case before reaching an agreement." *In re Zoom Video Commc'ns, Inc. S'holder Derivative Litig*, 2025 WL 2174674, at *4. "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *Id*.

This litigation was concluded at an early stage. Defendant provided Plaintiff with responses

to informal discovery requests detailing the extent of the Data Incident, the number of individuals affected (broken down by state) and Defendant's policies relating to the acquisition, retention/storage, and deletion of sensitive PII before the Data Incident and currently. Additionally, Plaintiff's Counsel independently researched the breach, and reviewed settlements in similar cases, in order to formulate an appropriate settlement demand. These materials were sufficient for the parties to conduct informed negotiations. *See, e.g., Barletti v. Connexin Software, Inc.*, No. 22-cv-04676, 2024 WL 1096531, at *7 (E.D. Pa. Mar. 13, 2024) (finding third *Girsh* factor satisfied when the "parties entered negotiations with a comprehensive understanding of the merits of this case and agreed to the settlement with a full understanding of financial position.").

This factor favors approval.

4 & 5. Risks of Establishing Liability and Damages.

In considering the risks of establishing liability, courts examine "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant Corp. Litig.*, 264 F.3d 201, 237 (3d Cir. 2001). Data breach cases are among the riskiest and most uncertain of all class action litigations, making settlement the more prudent course where, as here, a reasonable one can be reached. Here, Plaintiff Lim faces significant risks in proving liability and damages, including causation, materiality, reliance, predominance, loss causation, damages methodologies to be determined. Defendant would challenge each element and would present competing experts. The Settlement mitigates these risks, favoring approval. *See In re Philadelphia Inquirer Data Sec. Litig.*, 2024 WL 4582881, at *9 (discussing plaintiffs' risks in establishing liability and damages).

6. Risks of Maintaining Class Status Through Trial.

"A district court retains the authority to decertify or modify a class at any time during the

litigation if it proves to be unmanageable." *In re Warfarin*, 391 F.3d at 537. "If a class is not certified, it is uncertain that individual settlement class members possess the resources and financial ability to pursue their claims." *Nguyen*, 2024 WL 3691615, at *11.

Assuming, *arguendo*, that Plaintiff achieves class certification, Defendant is likely to challenge class certification and move to decertify as the case develops and at trial. Appellate risk further compounds uncertainty. This factor favors approval.

7. Ability of Defendant to Withstand a Greater Judgment.

This *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Warfarin*, 391 F.3d at 537-38. Defendant's ability to withstand a greater judgment should not preclude the Court's approval of the settlement agreement. Here, Plaintiff reached the Settlement based on the strengths and weaknesses of the case without regard to Defendant's ability to pay the full amount of a greater judgment. As above, the settlement provides substantial cash benefits to the Settlement Class. *See* Section V.C., *supra*. Thus, the seventh *Girsh* factor is of lower significance "because the settlement achieved immediate and tangible benefit for the class." *Halley*, 861 F.3d at 490.

This factor is neutral with regard to final approval and does not outweigh the other factors favoring approval.

8 & 9. The Range of Reasonableness of The Settlement Fund in Light of the Best Possible Recovery and Risks of Litigation.

"The last two Girsh factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d at 322. The Court considers "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538.

The Settlement amount is well within the range of reasonableness. Plaintiff believes the Settlement is commensurate with that of other data breach litigations and well within the damages that could have been awarded on the claims at trial. On a per class member basis, the settlement here is worth approximately $22. *See, e.g., Corra v. ACTS Ret. Servs., Inc*., No. 22-cv-2917, 2024 WL 22075, at *1 (E.D. Pa. Jan. 2, 2024) (providing a $325,000 settlement fund for a class of 20,754 individuals or $16.86 per person); *In re Wawa, Inc. Data Sec. Litig*., 2023 WL 6690705, at *1 (providing $5.00 per replaced payment card for consumers); *In re Onix Grp., LLC Data Breach*, 2024 WL 5107594, at *2 (providing a settlement of $1,250,000 for a class of 308,942 individuals or $4.05 per person); *In re Philadelphia Inquirer Data Sec. Litig*., 2025 WL 845118, at *2 (providing a settlement of $525,000 for 25,549 individuals or $20.55 per person).

Further, the risks of litigation are substantial. Defendant could prevail on any one of its defenses regarding class certification, liability, or damages. In that case, Plaintiff and the Settlement Class would receive nothing. Given these risks, the Settlement is within the range of reasonableness. The Court should conclude that the settlement amount here is "reasonable in light of the best possible recovery and the attendant risks of litigation—little or no recovery at all." *Halley*, 861 F.3d at 490. Considering the uncertainties and costs of continued litigation, the Settlement falls well within the range of reasonableness.

Plaintiff submits that the Settlement here satisfies the *Girsh* factors for settlement.

### C. The *Prudential* Factors Favor Final Approval

In addition to the *Girsh* factors, the Third Circuit, in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F3d 283, 324 (3d Cir. 1998), elaborated on additional factors that reviewing courts should consider when deciding whether to approve a proposed class action settlement. These factors were then clarified in *In re Pet Food Prods. Liab. Litig.* 629 F.3d 333,

350 (3d Cir. 2010). These *Prudential* factors overlap with the *Girsh* factors and are non-exclusive. But, importantly, only the factors relevant to the litigation need to be addressed. *In re Prudential*, 148 F.3d at 323–24. As discussed in more detail below, the relevant *Prudential* factors support final approval.

**1. The Maturity of the Substantive Issues.**

"The first [*Prudential*] factor—maturity of the underlying substantive issues—substantially mirrors the third *Girsh* factor, the stage of the proceedings. Under this factor, the advanced development of the record weighs in favor of approval." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024). Here, given Plaintiff's Counsel's knowledge of the applicable law in the data breach context, the substantive issues in this matter are quite mature. Due to the investigation and discussion throughout the litigation of this Action, both Parties are in a position to fully evaluate their own strengths and weaknesses. The stage of this Action lends itself in favor of final approval of the Settlement.

**2. The Existence and Probable Outcome of Claims by other Classes and Subclasses.**

Since only one Settlement Class Member has elected to be excluded, this factor weighs heavily in favor of approval. *See* Schmidt Decl. ¶ 14.

**3. The Comparison between the Results Achieved by the Settlement for Individual Class or Subclass members and the Results Achieved or Likely to be Achieved for Other Claimants.**

This Settlement is fair and reasonable and provides those impacted by the Data Incident with a favorable per person settlement value. Here this Settlement's per person value is comparable to, if not better than, other data breach settlements as discussed above. *See Girsh* factors 8&9, *supra*. It is unlikely that Class Members would bring these claims on their own, given the

imbalance between the cost of litigation and the limited ability to recover damages. These claims also would be subject to the same defenses that are outlined above. As such, this *Prudential* factor weighs heavily in favor of final approval.

**4. Whether Class or Subclass Members are Accorded the Right to Opt-Out of the Settlement.**

"Factor four considers whether class or subclass members are accorded the right to opt out of the settlement." *In re Suboxone*, 2024 WL 815503, at *10. Here, after the Court's Preliminary Approval Order, Notice was provided to the Settlement Class detailing the opt-out procedure and deadline. To date, only one class member has requested exclusion. Schmidt Decl. ¶ 14. As such, this *Prudential* factor weighs in favor of final approval.

**5. Whether Any Provisions for Attorneys' Fees are Reasonable.**

The Settlement's provision for attorneys' fees is reasonable and within the range of attorneys' fee awards commonly awarded in this Circuit, and the Notice specifically advised Class members of the attorneys' fees and expenses. Courts within this Circuit frequently award up to 33% of a common fund in fee awards in data breach cases. *See Holden v. Guardian Analytics, Inc.*, No. 23-cv-2115, 2024 WL 2845392, at *12 (D.N.J. June 5, 2024) (after deducting reimbursement for expenses, awarding 33% of the common fund in attorneys' fees); *In re Onix Grp., LLC Data Breach*, 2024 WL 5107594, at *16 (awarding 1/3 of common fund in attorneys' fees); *In re Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118, at *15 (similar). As such, this *Prudential* factor weighs in favor of final approval.

**6. Whether the Procedure for Processing Individual Claims under the Settlement is Fair and Reasonable.**

Under the Settlement, the procedure of individual claims is reasonable. The Settlement affords all Settlement Class Members the opportunity to file claims for cash payments and/or credit

protection. *See Holden*, 2024 WL 2845392, at *12 (recognizing similar tiered approach tailored to individual class members' claims while being administratively efficient. Thus, this *Prudential* factor weighs in favor of final approval.

**7. Notice to the Settlement Class Was Adequate and Satisfies the Requirements of Rule 23 and Due Process.**

The notice plan approved by this Court and which the Settlement Administrator executed, with the Parties guidance, conforms with the procedural and substantive requirements of due process and Rule 23. The Notice plan is more fully discussed in Section IV D, *supra*. These efforts allowed notices to reach approximately 87.8% of the Settlement Class. Schmidt Decl. ¶ 13. The notice to the Settlement Class here was the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement as fair, reasonable, and adequate; finally certify the Settlement Class pursuant to Rules 23(a) and 23(b)(3); approve the Plan of Allocation; direct implementation of the Settlement, including distribution of the Net Settlement Fund to eligible Class Members; grant the Application for Attorneys' Fees, Costs and Service Award; enter final judgment dismissing the action with prejudice; and (f) retain jurisdiction over all matters relating to the Settlement.

Dated: July 7, 2026

Respectfully submitted,

*/s/ Scott M. Tucker*

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
Robert J. Kriner, Jr. (Del. Bar No. 2546)
Scott M. Tucker (Del. Bar No. 4925)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
Tel: 302-656-2500

Fax: 302-656-9053
RobertKriner@chimicles.com
ScottTucker@chimicles.com

Marc H. Edelson
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
T: (215) 867-2399
medelson@edelson-law.com

*Attorneys for Plaintiff and the Putative Class*