**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SOKANKELLY LIM, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRADEZERO AMERICA, INC.,<br><br>Defendant. | Civil Action No. 24-1196-GBW |

Robert J. Kriner, Jr., Scott M. Tucker, CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP, Wilmington, DE; Marc H. Edelson, EDELSON LECHTZIN LLP, Newtown, PA.

*Counsel for Plaintiff*

Edward J. McAndrew, BAKER & HOSTETLER LLP, Wilmington, DE.

*Counsel for Defendant*

**<u>MEMORANDUM OPINION</u>**

July 30, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Sokankelly Lim ("Plaintiff" or "Plaintiff Lim") brings this action, individually and on behalf of those similarly situated, against Defendant TradeZero America, Inc. ("Defendant" or "TradeZero"). Now pending before the Court are the following motions: (1) Plaintiff's Motion for Attorneys' Fees (D.I. 18); and (2) Plaintiff's Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Plaintiff's Final Approval Motion") (D.I. 19). For the reasons set forth below, Plaintiff's Motion for Attorneys' Fees (D.I. 18) and Plaintiff's Final Approval Motion (D.I. 19) are GRANTED.

## I.      BACKGROUND

### A.      Procedural Background

On October 25, 2024, Plaintiff filed her Complaint in this action, alleging seven causes of action against Defendant. D.I. 1. The allegations in the Complaint centered around a data breach (the "Data Incident" or "Incident"), which allegedly occurred on July 29, 2024, and the subsequent disclosure of personally identifiable information ("PII") to unauthorized third parties. See id.

On May 15, 2025, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Action Settlement, and to Authorize Class Notice, and Schedule a Final Approval Hearing ("Plaintiff's Preliminary Approval Motion"). D.I. 11. On January 28, 2026, the Court held a hearing on Plaintiff's Preliminary Approval Motion. On January 29, 2026, the Court issued its Preliminary Approval Order, which granted Plaintiff's Preliminary Approval Motion. D.I. 17. In relevant part, the Court's Preliminary Approval Order (1) preliminarily approved the parties' settlement agreement (the "Settlement" or "Settlement Agreement"); (2) provisionally certified the Settlement Class for the purpose of settlement; (3) provisionally found that the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) were satisfied; (4) provisionally

2

found that the present action is properly maintainable as a class action under Rule 23(b)(3); (5) appointed Marc Edelson, Edelson Lechtzin LLP and Scott M. Tucker, Chimicles Schwartz Kriner & Donaldson-Smith LLP as Class Counsel; (6) appointed a Settlement Administrator; (7) approved the parties' proposed notice plan under Rule 23(c)(2)(B); (8) set forth procedures for Settlement Class Members to opt out or object to the Settlement; and (9) scheduled a Final Approval Hearing. *See id.*

On April 28, 2026, Plaintiff filed her Motion for Attorneys' Fees. D.I. 18. On July 7, 2026, Plaintiff filed her Final Approval Motion. D.I. 19. Defendant has not opposed either of Plaintiff's Motions. On July 28, 2026, the Court held a hearing on Plaintiff's Motions.

### B.    The Proposed Settlement Agreement

In this subsection, the Court summarizes the key terms of the parties' Settlement Agreement (D.I. 11-1) that are relevant to this Memorandum Opinion.

The Settlement Agreement identifies the following Settlement Class: "all individuals residing in the United States whose PII was or may have been affected by the Incident." *Id.* § I.47. The following individuals and entities are excluded from the Settlement Class: (1) "the Judge presiding over this [a]ction, and members of their direct families"; (2) "the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former officers and directors"; and (3) "Settlement Class Members who submit a request to opt-out prior to the Opt-Out Deadline." *Id.*

The Settlement Agreement requires Defendant to make a $325,000 non-reversionary cash payment into a "Settlement Fund." *Id.* § II.1. The Settlement Fund provides the funds from which attorneys' fees, costs, Plaintiff's service award, and payments to Settlement Class Members will be distributed. The resulting balance, after the deduction of those payments, is the "Net Settlement Fund." *Id.* § I.28. The Settlement Agreement establishes three means by which Settlement Class

3

Members could request cash payments from the Net Settlement Fund. *Id.* § IV.1. First, Settlement Class Members could submit a claim for their documented losses, up to $10,000 ("Cash Payment A"). *See id.* §§ IV.1.a, I.4. Second, Settlement Class Members could, in addition or as an alternative to the first option, submit a claim for reimbursement of any time spent securing their credit, up to 5 hours, at a rate of $30 per hour ("Cash Payment B"). *See id.* §§ IV.1.b, I.5. Third, in addition or as an alternative to the preceding options, Settlement Class Members could submit a claim for cash payment equivalent to the cost of monitoring their credit for three years, up to $300 ("Cash Payment C"). *See id.* §§ IV.1.c, I.6. All claimants, except for those that chose Cash Payment C, are entitled to three years of credit monitoring coverage ("Credit Monitoring"). *See id.* §§ IV.1.d, I.14. "Credit Monitoring will be arranged by the Settlement Administrator and paid for out of the Net Settlement Fund prior to calculation and issuance of any Cash Payments." *Id.* § IV.1.d. Under the terms of the Settlement Agreement, if the sum of the valid claims under Cash Payments A, B, and C, together with the cost of Credit Monitoring, exceeds the Net Settlement Fund, then approved claims for Cash Payments A, B, and C will receive a *pro rata* reduction. *See id.* § IV.1.e.

Settlement Class Members will receive payments from the Net Settlement Fund within seventy-five (75) days of the "Effective Date."[1] *Id.* § IX.11. In exchange, the Settlement Class Members agree to release, *inter alia*, claims that were asserted or could have been asserted against Defendant in this action or that relate to the Incident. *Id.* § XIII.

---

[1] *See id.* § I.19 (defining "Effective Date" to mean "30 days after the entry of the Final Approval Order, provided there are no objections to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of: (a) 30 days after entry of the Final Approval Order if no appeals are taken from the Final Approval Order; or (b) if appeals are taken from the Final Approval Order, then the earlier of 30 days after the last Court of Appeals or Supreme Court ruling affirming the Final Approval Order or denying certiorari, or 30 days after the entry of a dismissal of the appeal").

C.    Notice[2]

The Court's Preliminary Approval Order approved two forms of notice and the parties' proposed notice plan. *See* D.I. 17 at 3. The approved Short Form Notice provided Settlement Class Members information about the nature of this action, why the notice was sent, why they were included as a Settlement Class Member, the benefits received by Settlement Class Members, the means of filing a claim, how Settlement Class members could opt out or object to the Settlement, the consequences of not opting out, and a link to the Settlement Website. *See* D.I. 11-2. The approved Long Form Notice provided Settlement Class Members with additional information, including more detailed explanations of the categories of information listed in the Short Form Notice. *See* D.I. 11-3.

On or about February 24, 2026, following preliminary approval of the Settlement, the Settlement Administrator ("Analytics") obtained data regarding the members of the Settlement Class. D.I. 19-5 ¶ 5 [hereinafter "Analytics Decl."]. After the removal of duplicates, the data file provided to Analytics contained the names and addresses of 14,343 Settlement Class Members. *Id.* On March 16, 2026, after cross-referencing the provided addresses with the U.S. Postal Service National Change of Address database, Analytics mailed postcard notices to all 14,343 Settlement Class Members. *Id.* ¶¶ 6-7; *see also* D.I. 19-3, Ex. C (postcard notice containing same information as in the approved Short Form Notice). As of June 26, 2026, Analytics received 107 postcard notices returned with a forwarding address and re-mailed the postcard notices to the updated addresses. Analytics Decl. ¶ 11. Furthermore, as of June 26, 2026, 2,523 postcard notices were returned without a forwarding address. *Id.* ¶ 12. For each postcard notice returned without a

---

[2] On May 28, 2025, Analytics served notices to the Attorney General of the United States, as well as the Attorneys General of all 50 states, Washington D.C., Puerto Rico, Guam and the Virgin Islands, pursuant to 28 U.S.C. § 1715. *See* D.I. 25 ¶ 4; D.I. 25-1.

forwarding address, Analytics "conducted a skip trace"[3] to ascertain the new address of that respective Settlement Class Member, which resulted in the identification of 772 new addresses. *Id.* Analytics then re-mailed the postcard notices to these newly obtained addresses. *Id.*

Before mailing the postcard notices to the Settlement Class Members, Analytics also established the Settlement Website (https://tradezerodatasettlement.com). *Id.* ¶ 8. Accessible on the Settlement Website are copies of Plaintiff's Preliminary Approval Motion (D.I. 11), the Court's Preliminary Approval Order (D.I. 17), the Settlement Agreement (D.I. 11-1), Plaintiff's Complaint (D.I. 1), the Claim Form, and the Long Form Notice. *Id.* As of June 26, 2026, the Settlement Website had received 1,450 page views from 1,032 unique users. *Id.* In addition, Analytics established a toll-free number for Settlement Class Members to call for additional information regarding the Settlement. *Id.* ¶ 9. As of June 26, 2026, Analytics had received 46 calls to this number. *Id.* Finally, Analytics also established a dedicated email address and a P.O. box to receive and respond to inquiries from Settlement Class Members. *Id.* ¶ 10.

As a result of these thorough efforts, Analytics estimates that at least 12,592 Settlement Class Members (87.8% of the Settlement Class) successfully received direct notice. *Id.* ¶ 13. Analytics received 741 timely submitted claims for at least one form of benefit under the Settlement, each of which were deemed valid, in whole or in part, amounting to a valid claims rate of approximately 5.16% (741 valid claims out of 14,343 Settlement Class Members). *Id.* ¶¶ 15-16. As of June 26, 2026, Analytics' estimated expenses were $26,986. *Id.* ¶ 21.

---

[3] "A 'skip trace' is a generic term for varied private [investigation] techniques of tracking down missing persons. Some methods include use of public information, last known addresses, Department of Motor Vehicle information, financial information, talking with neighbors, etc." *Pilone v. Basik Funding Inc.*, No. CIV.05 3798 AET, 2007 WL 203948, at *1 n.3 (D.N.J. Jan. 24, 2007) (citing Janelle T. Calhoun, *Interstate Child Support Enforcement System: Juggernaut of Bureaucracy*, 46 MERCER L. REV. 921, 954 (1995)).

## II.  **LEGAL STANDARD**

Rule 23 of the Federal Rules of Civil Procedure governs class actions.  Rule 23(a) sets forth four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Classes that satisfy Rule 23(a) may be maintained as a class action under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  In cases where a proposal would bind class members, Rule 23(e)(2) requires that the Court find that the proposal is "fair, reasonable, and adequate" after the consideration of whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Third Circuit "has identified nine factors to be considered when determining whether a proposed class action settlement is fair, reasonable and adequate." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (*"Warfarin"*) (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). These nine *"Girsh* factors" are as follows:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 534-35 (quoting *Girsh*, 521 F.2d at 156-57). In addition to the *Girsh* factors, the Third Circuit has identified a series of considerations, which district courts may consider:

> [1] [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) (*"Prudential"*); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (*"Baby Products"*) ("Unlike the *Girsh* factors, each of which the district court must consider before

approving a class settlement, the *Prudential* considerations are just that, prudential."). Finally, in *Baby Products*, the Third Circuit identified one additional inquiry – "the degree of direct benefit provided to the class." 708 F.3d at 174.

## III.   DISCUSSION

The Court divides its discussion into two subsections: (A) the Court grants Plaintiff's Final Approval Motion; and (B) the Court grants Plaintiff's Motion for Attorneys' Fees.

### A.       The Court Grants Plaintiff's Final Approval Motion

#### 1.       The Court Certifies the Settlement Class for the Purpose of Settlement

"The Court may certify class actions for the sole purpose of settlement." *In re Onix Grp., LLC Data Breach Litig.*, No. CV 23-2288-KSM, 2024 WL 5107594, at *3 (E.D. Pa. Dec. 13, 2024) (citation omitted). "To approve the settlement, the class must be certifiable. That means it must satisfy Rule 23(a) and (b)." *Moon v. E.I. du Pont de Nemours & Co.*, No. 19-CV-1856-SB, 2023 WL 1765565, at *1 (D. Del. Feb. 3, 2023) (Bibas, J., sitting by designation).

The four prerequisites under Rule 23(a) are numerosity, commonality, typicality, and adequacy. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). Here, the Settlement Class readily satisfies Rule 23(a). First, the Settlement Class includes approximately 14,343 potential class members, which is more than sufficient to demonstrate numerosity. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). Second, the commonality requirement is satisfied because there are common questions of law and fact (e.g., whether Defendant was negligent in maintaining the PII of Plaintiff and other Settlement Class Members). *See Bianucci v. Rite Aid Corp.*, No. CV 24-3356, 2025 WL 2166015, at *7 (E.D. Pa. July 30, 2025) ("Whereas here plaintiffs suffer from the same data breach, commonality has been satisfied.").

9

*Third*, the typicality requirement is satisfied because Plaintiff's claims are typical of the Settlement Class. *See id.* ("The claims of the named plaintiffs are typical of the class – like the class members, the security of their data was compromised as a result of the data breach suffered by Rite Aid and its customers."). Indeed, as Plaintiff correctly observes, "all members share claims arising out of the same alleged cyberattack and data incident." D.I. 19 at 9. Fourth, Plaintiff and Class Counsel have adequately represented the Settlement Class, thereby satisfying the fourth requirement.

The Settlement Class also satisfies Rule 23(b)(3). As in *Bianucci*, "[q]uestions as to [Defendant's] obligations to safeguard the class members' personal information and as to its duty to the class can be answered in the aggregate. Individualized questions of injury do not predominate over these common liability questions, and for this reason the requirement of predominance is satisfied." 2025 WL 2166015, at *8. Moreover, a class action is the superior method for the fair and efficient adjudication of this controversy, since each individual class member has relatively low damages, there are thousands of potential class members, and it likely would not be worth it for any class member to individually litigate this action. *See id.* Thus, the predominance and superiority requirements of Rule 23(b)(3) are both satisfied. In addition to these textual requirements, the Third Circuit "requires that, in a class action under Rule 23(b)(3), 'class [members] . . . be "currently and readily ascertainable based on objective criteria.""" *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 129 (3d Cir. 2023) (citation omitted) (alteration in original). Here, as Plaintiff observes (D.I. 19 at 9), this requirement is met because Settlement Class Members are currently and readily ascertainable by using Defendant's records, which are objective and provide a reliable and administratively feasible mechanism for identifying class members. *See Gravley v. Fresenius Vascular Care, Inc.*, No. CV 24-1148, 2025 WL 2099219, at *4 (E.D. Pa. July 24, 2025).

Accordingly, since the Settlement Class meets the requirements of Rules 23(a) and (b)(3), the Court certifies the Settlement Class for the purpose of settlement.

### 2.    The Adequacy of Class Notice

"Because the Court has granted final certification to the class, the Court must now evaluate the adequacy of notice to the class members." *Dixon v. Lincoln Univ.*, No. CV 24-1057-KSM, 2025 WL 2677525, at *7 (E.D. Pa. Sept. 18, 2025) (citation omitted). In its Preliminary Approval Order, the Court found that the proposed notice plan set forth in the Agreement met the requirements of Rule 23(c)(2)(B). D.I. 17 at 3; *see also* D.I. 11-1 § VI (setting forth the responsibilities of the Settlement Administrator in administering class notice). "Now that the plan has been executed, the Court sees no reason to change its conclusion." *Dixon*, 2025 WL 2677525, at *7.

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 435 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*") (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

As summarized above, the contents of the notice provided to Settlement Class Members readily satisfy Rule 23(c)(2)(B). Analytics, an experienced claims administrator, was entrusted with administering the notice to Settlement Class Members. *See* Analytics Decl. ¶¶ 1, 4. Analytics carried out the parties' proposed notice plan pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, estimating that it successfully delivered direct notice to at least 87.8%

of the Settlement Class.  Under the circumstances presented in this action, the Court finds that the notice plan meets the requirements of Rule 23 and due process.  *See, e.g., Wood v. Saroj & Manju Invs. Philadelphia LLC*, C.A. No. CV 19-2820-KSM, 2021 WL 1945809, at *5 (E.D. Pa. May 14, 2021) (finding that a notice plan that reached 494 of 532 class members satisfied Rule 23 and due process); *In re Onix Grp., LLC Data Breach Litig.*, 2024 WL 5107594, at *7 (finding that a similar notice plan that reached 93.28% of class members satisfied Rule 23 and due process).

### 3.    The Settlement Is Fair, Reasonable, and Adequate

Having addressed the certification of the Settlement Class, the Court next considers whether the Settlement is fair, reasonable, and adequate.

### a.    *The Settlement Is Entitled to a Presumption of Fairness*

In the Third Circuit, a "presumption of fairness" applies to class settlements when: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *NFL*, 821 F.3d at 436 (citation omitted).  All negotiations in this action were conducted at arm's length by counsel experienced in this area of litigation.  Thus, the first and third requirements are satisfied.  As for the second requirement, the sufficiency of discovery, the Third Circuit has eschewed a rigid requirement of formal discovery in the presumption of fairness analysis, reasoning that, "[i]n some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation." *Id.* at 436-37 (citation omitted).  In the present action, the parties "participated in informal discovery" that enabled "Counsel to determine the class size and distribution, and formulate a settlement demand." D.I. 19 at 12.  For example, the parties exchanged discovery "detailing the extent of the Data Incident, the number of individuals affected (broken down by state) and Defendant's policies relating to the acquisition, retention/storage, and deletion of sensitive PII before the Data Incident

12

and currently." *Id.* at 15. This discovery, in turn, allowed Counsel to independently research the breach and review settlements in similarly situated cases. The Court finds that the parties' informal discovery was sufficient to provide Plaintiff with "the strengths and weaknesses of [her] case," especially considering Class Counsel's experience. *NFL*, 821 F.3d at 436 (citation omitted). Thus, the second requirement is satisfied. As for the fourth requirement, there has been no objection to the Settlement, meaning this final requirement is also satisfied. For the foregoing reasons, the Court finds that the Settlement is entitled to a presumption of fairness.

> b. *The Settlement Is Fair, Reasonable, and Adequate*

In cases where a proposal would bind class members, Rule 23(e)(2) provides that "the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the following:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Here, the Court finds that this settlement satisfies the requirements of Rule 23(e)(2). The Settlement Class has been adequately represented by Class Counsel and Plaintiff, and the Settlement is the product of arm's length negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A), (B). Moreover, the relief provided for the Settlement Class – when accounting for the costs, risks, and delay of trial, whether notice was adequately distributed to the class, and the

13

terms for the proposed award of attorneys' fees – is adequate. *See* Fed. R. Civ. P. 23(e)(2)(C).

Finally, the Settlement treats class members equitably relative to one another. *See* Fed. R. Civ. P.

23(e)(2)(D). Having addressed the requirements of Rule 23(e)(2), the Court next considers the

*Girsh* factors, followed by the relevant *Prudential* considerations, and the *Baby Products* inquiry.

i.    The *Girsh* Factors

The first *Girsh* factor – the complexity, expense, and likely duration of the litigation –

"captures the probable costs, in both time and money, of continued litigation." *Warfarin*, 391 F.3d

at 535-36 (citation omitted). In this action, this factor strongly favors approval because litigating

this action through trial would require significant and costly discovery, pretrial motions involving

complex and potentially novel issues, a trial, and potentially post-trial motions and an appeal. *See*

*id.*; *see also Cunningham v. DG3 N. Am., Inc.*, No. 2:24-CV-07385, 2025 WL 2919331, at *4

(D.N.J. Oct. 14, 2025) ("This action is complex as it involves thorny issues regarding the emerging

field of data breach liability.").

The second *Girsh* factor – the reaction of the class to the settlement – "attempts to gauge

whether members of the class support the settlement." *Warfarin*, 391 F.3d at 536 (citation

omitted). "As a general rule, a small number of objectors weighs in favor of approval." *In re*

*Zoom Video Commc'ns, Inc. S'holder Derivative Litig.*, No. CV 20-797-GBW, 2025 WL 2174674,

at *4 (D. Del. July 31, 2025) (citation omitted). Here, as Plaintiff observes (D.I. 19 at 14), no

Settlement Class members have objected to the Settlement and only one has requested exclusion.

Moreover, Analytics received 741 claim forms, which amounts to a 5.16% claims rate. This is a

relatively high rate for a data breach class action. *See Gravley*, 2025 WL 2099219, at *5 (claims

rate of 3.83% was "relatively high" for a data breach class action); *see also In re Wawa, Inc. Data*

*Sec. Litig.*, 141 F.4th 456, 476 (3d Cir. 2025) (claims rate of 2.56% was "comparable to other low-

14

harm data breach class action settlements"). Given the relatively high claims rate, the lack of any objectors, and the low exclusion rate, this second *Girsh* factor also weighs in favor of approval.

This third factor – the stage of the proceedings and the amount of discovery completed – "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537 (citation omitted) (alteration in original). In the present action, the parties reached an agreement after several substantive settlement negotiations. "While this case settled at an early stage, the parties nonetheless engaged in informal discovery that reflected, among other things, the size of the class and identity of its members, as well as the potential damages." *Nguyen v. Educ. Computer Sys., Inc.*, No. 2:22-CV-1743, 2024 WL 3691615, at *10 (W.D. Pa. Aug. 7, 2024). As discussed *supra*, the parties had sufficient information to evaluate the merits of their respective claims and defenses. Thus, the Court finds that the third *Girsh* factor weighs in favor of approval. *See id.*

The fourth and fifth *Girsh* factors – the risks of establishing liability and damages – together "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Warfarin*, 391 F.3d at 537 (citations omitted). As reflected in the parties' settlement agreement and recognized by counsel during oral argument, both parties face risks in this matter. For example, Plaintiff brings claims that will require substantial fact and expert discovery. Assuming Plaintiff could muster sufficient evidence to support her claims, Plaintiff would then have to prevail on her claims at trial and overcome post-trial hurdles, including a potential appeal. Conversely, Defendant faces similar risks pertaining to its liability arising from the Incident and whether it could successfully mount

15

defenses to each of Plaintiff's claims. Thus, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approval.

The sixth *Girsh* factor – the risks of maintaining the class action through the trial – "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537. The Court "retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Id.* (citation omitted). Given that there "will always be a 'risk' or possibility of decertification," *Prudential*, 148 F.3d at 321, the Court finds that the sixth *Girsh* factor weighs in favor of approval.

The seventh *Girsh* factor – the ability of the defendant to withstand a greater judgment – "considers 'whether the defendant[] could withstand a judgment for an amount significantly greater than the [s]ettlement.'" *Warfarin*, 391 F.3d at 537-38 (second alteration in original) (citation omitted). Plaintiff asserts that this factor is neutral in the present case. D.I. 19 at 16. Neither party has raised any issues regarding Defendant's inability to pay or supplied the Court with evidence supporting Defendant's ability to bear a greater judgment. *Cf. NFL*, 821 F.3d at 440 ("The seventh *Girsh* factor is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement."); *Prudential*, 148 F.3d at 322 (finding no error in district court's consideration of the potential that defendant's credit rating would decline due to the amount of the settlement). Thus, the Court has given relatively little weight to this factor and finds that the seventh *Girsh* factor is neutral.

The eighth and ninth *Girsh* factors – the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation – "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin: reasonableness in light of the best possible recovery and

16

reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin*, 391 F.3d at 538 (citing *Prudential*, 148 F.3d at 322). Plaintiff asserts that the settlement amount is appropriate with respect to these two factors because it is well within the potential damages award at trial and is commensurate with recent settlements approved in similarly situated data breach class actions on a per-member basis. *See* D.I. 19 at 17 (collecting several cases from within the past three years). As discussed above, both parties face significant risks. Given these risks and considering that the parties engaged in arm's length negotiations, the Court finds that the settlement fund is reasonable.

ii.    The *Prudential* Considerations

Having addressed the *Girsh* factors, the Court next considers the pertinent *Prudential* considerations. *See Prudential*, 148 F.3d at 323 (instructing district courts to consider the *Prudential* considerations "when appropriate"). In this action, the Court finds that the first, fourth, fifth, and sixth *Prudential* considerations are relevant. "The first [*Prudential* consideration] – maturity of the underlying substantive issues – substantially mirrors Girsh factor three, the stage of the proceedings." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024). For substantially the same reasons discussed in the Court's analysis of *Girsh*'s third factor, the Court finds that this first *Prudential* consideration weighs in favor of granting the settlement, albeit only slightly, given the relatively early stage of this case. The fourth *Prudential* consideration – whether class or subclass members are accorded the right to opt out of the settlement – strongly favors settlement, since each member of the Settlement Class was given the right to opt out. The fifth *Prudential* consideration – whether any provisions for attorneys' fees are reasonable – favors settlement because the attorneys' fees provided for in the Settlement Agreement are reasonable, as discussed in detail below. The sixth *Prudential* consideration – whether the procedure for processing individual

17

claims under the settlement is fair and reasonable – similarly favors settlement in this action, since the Settlement Administrator provided Settlement Class Members detailed information on how they submit claims. Further, the procedure for processing individual claims was reasonable under the circumstances. On balance, the Court finds that the *Prudential* considerations favor settlement.

### iii.    The *Baby Products* Inquiry

Having addressed the relevant *Prudential* considerations, the Court turns to the *Baby Products* inquiry: "the degree of direct benefit provided to the class." The Court may consider, in making this determination, "the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards." *Baby Products*, 708 F.3d at 174. The first consideration is not relevant in the instant case, as all identified Settlement Class Members are entitled to receive an award. *See, e.g., Cantave v. Saint Joseph's Univ.*, No. CV 23-3181, 2024 WL 4829718, at *5 (E.D. Pa. Nov. 19, 2024). The second consideration – the size of the individual awards compared to claimants' estimated damages – reflects a compromise between the parties. *See McLachlan v. Bd. of Trs. of Elevator Consttructors Annuity & 401(k) Ret. Plan*, No. CV 22-4115, 2025 WL 1116533, at *7 (E.D. Pa. Apr. 15, 2025). As for the third consideration, the claims process used to determine awards is fair, as it offered Settlement Class Members several options, and provides for the adjustment of any benefits on a *pro rata* basis. *See id.* ("[T]he claims process used to determine individual awards is fair as it provides a *pro rata* share to all Settlement Class Members."). Moreover, while the distribution of the Net Settlement Fund has not yet occurred, there is no significant concern that a large portion of the Net Settlement Fund will be distributed to a *cy pres* recipient, as opposed to the Settlement Class Members. *See Baby Products*, 708 F.3d at 174 ("Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds."). On balance, the

18

Court finds that the *Baby Products* inquiry favors settlement. *See Barletti v. Connexin Software, Inc.*, No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *7 (E.D. Pa. Mar. 13, 2024) (finding that this inquiry weighed in favor of settlement where class members were the direct beneficiaries of the settlement, received benefits in the form of credit monitoring and insurance or a cash payment, and the settlement fund was non-reversionary).

*    *    *

For the foregoing reasons, the Court finds that the Settlement is fair, reasonable, and adequate. Plaintiff's Final Approval Motion (D.I. 19) is granted.

**B.    The Court Grants Plaintiff's Motion for Attorneys' Fees**

Plaintiff's Motion for Attorneys' Fees seeks the following: (1) "Class Counsel Fees of one-third (1/3) of the Gross Settlement Amount ($108,342), as well as costs ($700.45)" ("Plaintiff's Fee Request"); and (2) "a Service Award payment of $5,000.00 to Plaintiff Lim as the Class Representative" ("Plaintiff's Service Award Request"). D.I. 18 at 1. The Court addresses each in turn.

1.    <u>The Court Grants Plaintiff's Fee Request</u>

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts assessing attorneys' fees typically apply either the percentage-of-recovery method, which awards a certain percentage of the settlement amount, or the lodestar method, which multiplies the number of hours worked by a reasonable hourly billing rate for the services." *O'Hern v. Vida Longevity Fund, LP*, No. CV 21-402-SRF, 2023 WL 3204044, at *8 (D. Del. May 2, 2023).

"In common fund cases such as this one, it is typical for Class Counsel to request a percentage of the recovery." *Id.* In evaluating the fairness of such a request, courts within the Third Circuit weigh the following factors:

19

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The application of these factors is "flexible." *Id.*

Here, the Court finds that the *Gunter* factors favor granting Plaintiff's Fee Request. First, the fund created is sizeable, conforms with similar cases within this region, and will benefit a large number of claimants. Second, as noted above, there have been no objections to the proposed attorneys' fees. Third, the attorneys involved in this action are capable and skilled in litigating class actions. Thus, the first three *Gunter* factors support granting Plaintiff's Fee Request. As for the fourth factor, while this litigation involves complex and thorny issues, the relatively short duration of this litigation "offset[s]" the impact of this factor, making it neutral. *See Cunningham*, 2025 WL 2919331, at *10 (collecting cases). Fifth, as noted above, Plaintiff faces a number of risks that could lead to nonpayment, including (1) decertification of the Settlement Class and (2) failure to establish liability or damages, given that Class Counsel took this case on a contingency basis. *See O'Hern*, 2023 WL 3204044, at *9. Sixth, the amount of time devoted to the case by Class Counsel, as analyzed further below in the Court's lodestar cross-check, favors granting Plaintiff's Fee Request. Thus, the fifth and sixth *Gunter* factors also support granting Plaintiff's Fee Request. As for the seventh *Gunter* factor, Plaintiff's Fee Request falls within the range of the fee awards in common fund cases using the percentage of recovery method. *See Holden v. Guardian Analytics, Inc.*, No. 2:23-CV-2115, 2024 WL 2845392, at *11 (D.N.J. June 5, 2024) ("In common fund cases such as this one in which the percentage-of-recovery methodology is

20

used, fee awards have ranged between 19% to 45% of the settlement fund."). However, it is on the higher end for data breach cases, which typically range between 20% and 30% of the settlement. *See id.* (collecting cases). On balance, the Court finds that this seventh *Gunter* factor is neutral. *Compare id.* (finding that this factor weighed against the fee request), *with In re Philadelphia Inquirer Data Sec. Litig.*, No. CV 24-2106-KSM, 2025 WL 845118, at *13 (E.D. Pa. Mar. 18, 2025) (finding, in a data breach class action, that this factor favored a fee request for 33.33% of the settlement distribution).

In addition to these seven *Gunter* factors, courts may consider additional factors set forth in *Prudential*, "including (1) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated if the case were subject to a private contingent fee arrangement when counsel was retained; and (3) any innovative terms of settlement." *O'Hern*, 2023 WL 3204044, at *10 (citing *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009)). As for the first of these additional factors, "the entire value of the settlement is attributable to the efforts of Class Counsel because there is no governmental investigation." *Id.* As for the second, the fees request falls within the range of percentages that would be expected in a private contingent fee negotiation. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (explaining that, "in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"). The last of these additional factors is neutral, since there do not appear to be any innovative terms in the Settlement. D.I. 18 at 9 (admitting that the Settlement does not contain novel or innovative terms); *see also In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 389 (E.D. Pa. 2019) ("In the absence of any innovative terms, this factor neither weighs in

21

favor nor against the proposed fee request."). On balance, the Court finds that the factors set forth in *Gunter* and *Prudential* weigh in favor of granting Plaintiff's Fee Request.

"The reasonableness of the percentage-of-recovery amount is generally confirmed using the lodestar calculation method, which is performed by 'multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys.'" *O'Hern*, 2023 WL 3204044, at \*10 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005), *as amended* (Feb. 25, 2005)). In a sworn declaration, Class Counsel represents that the collective lodestar calculation between the two law firms amounted to $123,890 as of March 2026, based on a series of varying hourly rates for attorneys and supporting staff. D.I. D.I. 18-2 ¶¶ 22-24. As Plaintiff acknowledges, these calculations do not account for the ongoing work of Class Counsel and future efforts regarding the distribution of class benefits. *See* D.I. 18 at 11. Notwithstanding, the resulting lodestar multiplier is 0.874 (D.I. 18-2 ¶ 22), which means that Plaintiff's Fee Request is less than the amount that Class Counsel would have received at their regular billing rates. *See O'Hern*, 2023 WL 3204044, at \*10. This "negative multiplier" is also lower than the lodestar multipliers that are typically awarded within the Third Circuit. *See id.* Since this lodestar multiplier is "well under the generally accepted range," it provides "strong additional support for approving the attorneys' fee request." *Id.* (quoting *Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564, 572 (E.D. Pa. 2012)).

The Court similarly grants Plaintiff's Fee Request to the extent it seeks reimbursement of expenses incurred by Class Counsel (e.g., court fees, photocopying costs), which are reasonable and adequately documented. *See id.* ("Counsel in common fund cases is entitled to reimbursement

of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." (citation omitted)).

For the foregoing reasons, the Court grants Plaintiff's Fee Request in its entirety.

### 2.  The Court Grants Plaintiff's Service Award Request

"The Third Circuit has expressly authorized service awards to class representatives." *Bennett v. Schnader Harrison Segal & Lewis LLP*, No. 2:24-CV-00592-JMY, 2026 WL 202548, at *12 (E.D. Pa. Jan. 22, 2026) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011)). "Service awards are common in collective and class actions, especially in cases where a common fund has been created to benefit all members." *Paraham v. LCT OpCo LLC*, No. CV 24-3148, 2025 WL 2935246, at *10 (E.D. Pa. Oct. 15, 2025). "Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Welch v. Schutz Container Sys., Inc.*, No. CV 23-3970 (ESK/SAK), 2026 WL 905423, at *5 (D.N.J. Apr. 2, 2026) (citation omitted). "Where service award payments come out of a 'common fund independent of attorneys' fees, the Court must "carefully review" the request for fairness to other class members.'" *Id.* (citation omitted). In evaluating such requests, courts have often considered a variety of factors, including: "(1) the risk involved for the named plaintiff in pursuing the litigation; (2) any personal difficulties suffered by the named plaintiff in light of the litigation; (3) the duration of the litigation; (4) the degree of the named plaintiff's personal involvement in the litigation; and (5) the named plaintiff's personal benefit solely in his capacity as a member of the class." *Bennett*, 2026 WL 202548, at *12 (citation omitted).

Here, Plaintiff requests a service award of $5,000 for compensation for her work as the lead plaintiff in this action. As Plaintiff is the only named plaintiff, "there would be no benefit to the Settlement Class Members if Plaintiff had not stepped forward and prosecuted this matter to

23

the current resolution." *Id.* (citation omitted). Plaintiff faced certain individual risks by virtue of her name being attached to public documents in litigation and by being the sole named plaintiff. Moreover, in their declaration in support of Plaintiff's Motion for Attorneys' Fees, Class Counsel attested to Plaintiff's hard work throughout this litigation. *See* D.I. 18-2 ¶ 9 (declaring that Plaintiff "worked diligently with Plaintiffs' counsel to prosecute this litigation providing background information, producing documents and assisting in discovery."). Furthermore, during oral argument, Class Counsel confirmed Plaintiff's active involvement and indispensable work in this action, and no Settlement Class Members objected to Plaintiff's Service Award Request. While the Court recognizes that this action was relatively short in duration, on balance, the Court finds that the *Bennett* factors weigh in favor of approving Plaintiff's Service Award Request, especially given her hard work in assisting Class Counsel. *See Bennett*, 2026 WL 202548, at *12.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Final Approval Motion (D.I. 19), and thereby approves the Settlement (D.I. 11-1). The Court also grants Plaintiff's Motion for Attorneys' Fees (D.I. 18). An Order consistent with this Memorandum Opinion will be entered.